Filed 5/19/26  In re A.G. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re A.G., A Person Coming Under the Juvenile Court Law. | 2d Juv. No. B349620 (Super. Ct. No. J073534) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY,<br><br>    Respondent,<br><br>v.<br><br>L.S.C.,<br><br>    Appellant. | |

L.S.C. (mother) appeals the juvenile court's order terminating parental rights as to A.G.  (Welf. & Inst. Code § 366.26.)[1]  Mother contends:  (1) the court prejudicially erred in

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

denying her parental bond exception; and (2) Ventura County Human Services Agency (Agency) and the juvenile court failed to adequately comply with the inquiry requirements of the Indian Child Welfare Act (ICWA) and its state counterpart. We will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On August 13, 2024, the Agency filed a section 300 petition regarding A.G., born in August 2024. The petition alleged mother tested positive for methamphetamine and fentanyl at birth. Both mother and father had substance abuse issues that periodically interfered with their ability to provide adequate care and supervision. A.G. entered the care of resource parents within days of birth.

At an uncontested jurisdiction and disposition hearing, the juvenile court sustained the petition. It offered reunification services to mother but bypassed services for father.

After minor's counsel requested a contested six-month review hearing, the parties ultimately came to an agreement. Reunification services were terminated and a section 366.26 hearing was set. If mother entered a program and did well, her counsel would file a JV-180 request. During the dependency period, mother had struggled with sobriety as she entered and exited drug treatment programs and failed or refused drug tests.

At the section 366.26 hearing, mother testified she currently visited A.G. three times per week for 90 minutes. Her visitation schedule had varied throughout the case, but she had missed just one visit. At the visits, they played and shared meals, and mother bathed him. A.G. cried when mother put him in the car. Mother usually tried to comfort him by giving him a toy or bottle, or by hugging and kissing him. Mother believed

2

A.G. had a strong bond with her because of how happy he was to see her and she "could just feel it as a mom."

According to the section 366.26 report, there was "no evidence to support that [A.G.] and the parents have such a significant relationship that it would be detrimental to [A.G.] if this relationship was severed." The report noted that although mother's visitation had been liberalized, it "was returned back to monitored six months ago due to the mother's lack of progress in services and failure to demonstrate that she is sober and engaged in treatment."

Regarding the parental-benefit exception, the court acknowledged mother satisfied the first prong of visitation. As to the second prong, the court could not find a positive emotional attachment. The court noted it needed to consider factors like the child's age and the amount of time spent in mother's care.

At one point, the court addressed mother as follows: "And I think you would acknowledge that there's still quite a bit of things that you need to work on. And so here's an important question, which I don't—I'm not expecting you to answer, but I think you would acknowledge there's some substance abuse issues that you still have to deal with, as well as some other things. And, you know, how long should [A.G.] have to wait? How long should he have to wait for you to try and get on track? That's not fair to him. You know, children—all children need stability; they need permanency."

The court then stated the second prong "essentially asks is the parent ready and has engaged in the parental role, the role of a parent, and I don't see how I can find in this particular case based on visitations that you have, which I'm sure are pleasant; I'm sure you feel that love with [A.G.] But based on those visits

3

alone and the amount of time he has either been in your care or out of your care, I don't know how I can find that there's a positive emotional attachment. But I consider all of the factors."

The court indicated it did not need to reach the third prong given its finding on the second. The court stated that even if it did consider the third prong, it could not find that terminating parental rights would be detrimental to A.G. for the reasons the second prong was not met. The court terminated parental rights and freed A.G. for adoption.

*ICWA*

On August 8, 2024, a social worker reviewed the ICWA-010 form with both parents, who gave no reason to believe the child is or may be a member of an Indian tribe. Both parents later completed ICWA-020 forms answering no to all queries regarding Indian ancestry. Subsequently, another social worker spoke with both parents, who denied enrollment in a federally recognized tribe.

During the case, the Agency documented ICWA inquiries with relatives and other individuals. Maternal grandfather stated his half-brother was registered with the Tejon tribe. This half-brother, who shared a mother with the maternal grandfather, denied registration with a federally recognized tribe. The maternal great grandmother reported she was registered with the Diegueno tribe in Southern California. However, she did not register her children. She was not in possession of her documents at the time due to a recent move but provided contact information for a relative on the Indian Council.

A social worker sent inquiries to the Bureau of Indian Affairs (BIA), the California Department of Social Services, and seven Diegueno tribes. The tribes provided no response

4

indicating A.G. was either a member of or eligible for membership with the tribes. A social worker spoke with the relative that maternal great grandmother had referenced. He did not know if she was registered with a tribe and noted several Diegueno tribes existed.

At the detention hearing, the court stated "there's no indication" A.G. was an Indian child and ICWA did not appear to apply. At the jurisdiction and disposition hearing, the court stated ICWA continued not to apply. At a pretrial and ICWA review hearing, the court found the Agency had made reasonable efforts based on maternal great grandmother's information. ICWA did not apply. The court did not address ICWA at the section 366.26 hearing.

## DISCUSSION

### *Parental-Benefit Exception*

Appellant argues the juvenile court infused its findings regarding the parental-benefit exception's second prong with considerations specifically disapproved in *In re Caden C.* (2021) 11 Cal.5th 614 (*Caden C.*). Appellant also maintains the court prejudicially erred in failing to balance the competing variables for the third prong. We conclude no error occurred.

""At a permanency plan hearing, the [juvenile] court may order one of three alternatives: adoption, guardianship or long-term foster care. [Citation.] If the dependent child is adoptable, there is a strong preference for adoption over the alternative permanency plans." [Citation.]'" (*In re Katherine J.* (2022) 75 Cal.App.5th 303, 316, quoting *In re B.D.* (2021) 66 Cal.App.5th 1218, 1224.) If the juvenile court finds the child adoptable, it must terminate parental rights unless one of several statutory exceptions applies. (§ 366.26, subd. (c)(1)(B).)

5

A parent invoking the parental-benefit exception has the burden of proof and must establish three prongs by a preponderance of the evidence: (1) "regular visitation and contact" between the parent and child; (2) "a substantial, positive, emotional attachment to the parent—the kind of attachment implying that the child would benefit from continuing the relationship"; and (3) "terminating that attachment would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home." (*Caden C.*, *supra*, 11 Cal.5th at p. 636; § 366.26, subd. (c)(1)(B)(i).) The inquiry's focus is the child's best interests. (*Caden C.*, at p. 632.)

We review the first two prongs for substantial evidence. (*Caden C.*, *supra*, 11 Cal.5th at pp. 639-640.) We likewise review for substantial evidence any factual determinations underpinning the third prong. (*Id*. at p. 640.) The third prong's "ultimate decision—whether termination of parental rights would be detrimental to the child due to the child's relationship with his parent—is discretionary and properly reviewed for abuse of discretion." (*Ibid*.)

The juvenile court's analysis of the parental-benefit exception complied with *Caden C*. The court focused on whether a "positive emotional attachment" existed. The court highlighted relevant factors like the child's age and the amount of time spent in mother's care. (*Caden C.*, *supra*, 11 Cal.5th at p. 632.) The court noted the "pleasant" visits with A.G. but ultimately could not find the requisite attachment. Given A.G. was just 14 months old at the time of the hearing and had spent virtually his entire life outside of mother's custody, substantial evidence supports the court's ruling.

Mother finds fault with the court's comments related to her substance abuse issues. Read in context, these comments do not indicate the court based its ruling as to the second *Caden C.* prong on mother's ongoing issues. Rather, the comments were an aside to mother designed to underscore the necessity of focusing on A.G.'s needs, specifically stability and permanency. An overarching focus on the child's best interests comports with *Caden C.* (*Caden C.*, *supra*, 11 Cal.5th at p. 632.)

Seizing on the court's remarks regarding the parental role, mother argues she did not have to demonstrate a readiness to assume full-time care of A.G. for the exception to apply. The juvenile court in this case did not impose any such requirement. The term "'parental role'" is ambiguous. (See, e.g., *In re Katherine J.*, *supra*, 75 Cal.App.5th at p. 319.) Here, however, the totality of the court's ruling clarifies that underlying factors relied upon included A.G.'s age, time in mother's care, and the quality of visitation—all appropriate considerations. (See *In re A.L.* (2022) 73 Cal.App.5th 1131, 1149 [affirming even where juvenile court used "'parental role'" language].)

Given the court's ruling on the second *Caden C.* prong, analysis of the third prong was unnecessary. "[A] parent must prove *all three* components of the beneficial relationship exception. A failure of proof on any one of them is fatal." (*In re Katherine J.*, *supra*, 75 Cal.App.5th at p. 322, fn. 10.)

*ICWA*

Mother argues the Agency and court failed to adequately comply with the inquiry requirements of ICWA and CAL-ICWA. The Agency concedes "the ICWA inquiry into maternal great-grandmother . . . fell short of being adequate." We reject the concession and conclude reversal is unwarranted.

7

ICWA defines an "'Indian child'" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); see also § 224.1, subd. (b).)

"Agencies and juvenile courts have 'an affirmative and continuing duty' in every dependency proceeding to determine whether ICWA applies by inquiring whether a child is or may be an Indian child." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1131-1132 (*Dezi C.*); § 224.2, subd. (a).) "'This continuing duty can be divided into three phases:  the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice.'" (*In re C.R.* (2025) 112 Cal.App.5th 793, 799.)

"We generally review the juvenile court's factual finding that ICWA does not apply for substantial evidence." (*In re C.R.*, *supra*, 112 Cal.App.5th at p. 800; see also § 224.2, subd. (i)(2).) "[T]he juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141.) "If, upon review, a juvenile court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation as required by California law [citation], there is no error . . . ." (*Ibid.*)

Applying a deferential standard of review, the inquiry regarding maternal great grandmother was adequate.  The Agency spoke with a relative who she indicated could provide additional information.  That individual did not know if maternal great grandmother was registered with a tribe.  The Agency also sent an ICWA inquiry letter to the BIA and seven Diegueno

8

tribes.  (See § 224.2, subd. (e)(2).)  The Agency was not required to recontact these entities to fulfill its continuing duty.  (See *In re H.M.* (2025) 109 Cal.App.5th 1171, 1183 [disagreeing with claim that department obligated "to again contact" tribe after providing requested information].)

In addition to the efforts regarding maternal great grandmother, the Agency documented ICWA inquiries with both parents, the resource parents, father's friend, mother's prior partner, maternal grandfather and his half-brother, a paternal uncle, paternal grandmother, and paternal great grandmother. The Agency thoroughly addressed the only reasons to believe A.G. was an Indian child.  Sufficient evidence supports the conclusions that the inquiry was adequate and that ICWA was inapplicable.  (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141.)

Mother argues the juvenile court failed in its independent duty of inquiry regarding both parents, maternal grandfather, and maternal step-grandmother.  (See 25 U.S.C. § 1912(a); 25 C.F.R. § 23.107(a); § 224.2, subd. (c); Cal. Rules of Court, rule 5.481(a)(2)(A).)  As to mother and father, their negative responses to any ICWA inquiry are abundantly clear based on the ICWA-010 form, ICWA-020 form, and subsequent conversation with the Agency.  Likewise, any court inquiry of maternal grandfather would have served only to duplicate the Agency's effort.  And maternal step-grandmother, who did not qualify as an extended family member statutorily, could not be reasonably expected to contribute any unique information.  (25 U.S.C. § 1903(2); § 224.1, subd. (c)(1).)  Any issue concerning the court's inquiry does not undermine the evidence's sufficiency.

DISPOSITION

The order terminating parental rights is affirmed.

NOT TO BE PUBLISHED.


                                    CODY, J.

We concur:


YEGAN, Acting P. J.


BALTODANO, J.

Gilbert A. Romero, Judge
Superior Court County of Ventura
_____


Aida Aslanian under appointment by the Court of Appeal, for Appellant L.S.C. (mother).

Tiffany N. North, County Counsel, and Joseph J. Randazzo, Principal Assistant County Counsel, for Respondent Ventura County Human Services Agency.